## Reiff's Appeal.

An administrator permitting goods to remain with the widow, is chargeable at the appraisement; nor is evidence admissible to show they were of less value.

*March* 4.—The administrator, settling his accounts, proved that certain debts in the appraisement were either paid in the decedent's lifetime, or were valueless.   The item was allowed as a credit.   The furniture was appraised at $211 75; it had been left with the widow. This valuation was reduced $22 71.   The auditor refused to hear testimony to reduce the valuation of such articles as the widow was entitled to under the act of Assembly, the estate being insolvent; and after deducting the appraised value of such articles, charged accountant with the balance of appraisement.

*Wm. Hirst*, for appellant.—The inventory is primâ facie evidence, but not conclusive, and it was in fact so considered by the auditor, for he permitted us to discharge ourselves of the debts. [*Curiam.*—The debts are not properly a part of the inventory.] The practice has always been to put them in. [*Rogers*, J.—The proper practice is for appraisers to add a list of debts, marking them speedy or desperate; the former is a primâ facie charge, the latter not.] We offered to show we were entitled to retain all the articles of furniture. In Gordon's Dec. 156, 159, it is said the inventory is not conclusive.

*Brightly*, contrà.—The offer was not thus made; but the auditor in fact did make an allowance. Our act requires an appraisement by sworn officers, which is not necessary in England; hence it has always been considered a fair value when the goods are retained. Here the widow herself was the witness offered.

*March* 10. ROGERS, J.—Whenever there is reason to believe that the estate of a deceased person is insufficient to pay his debts, exclusive of such articles as may be by law exempted from levy and sale, upon an execution against a debtor, it is the duty of the administrator or executor to keep a distinct and separate account of all such articles so exempted, and to suffer the same to remain for the use of the widow and children, if residing with the deceased at the time of his death; sect. 4, act of Feb. 24, 1834. Although such articles do not properly constitute part of the inventory, yet the list of the exempt property should be noted by the administrator in his return to the register, for the information and guidance of that officer and the creditors. It may, however, happen, that the insolvency may be unknown, and in such cases he cannot be subjected to any injury, for a subsequent appropriation to the use of the widow and children, proved it does not exceed the limits prescribed by the act. In this case no separate account was kept, but the widow was allowed to keep in her possession all the household furniture, &c., belonging to the estate, at its appraised value; but, notwithstanding, the court, in the settlement of the account, has made an ample allowance for the exempt articles, and this is all the administrator can reasonably require. He has lost nothing, and he cannot complain that he obtains no advantage by neglecting to comply with the directions of the act.

But the appeal is taken on another ground. The appellant, the administrator, complains that he is charged with the appraised price of the goods taken by the widow and children, although he offered to prove that they were of much less value. It has been questioned by some whether an administrator is, in strictness, justifiable in permitting

the widow to take property at the appraisement, as it is notorious that in a great majority of cases the assets are put at an undervalue. It has been thought that even in that case it should be submitted to the test of a public sale; but from motives of humanity a different practice has been suffered to prevail, that cannot now be disturbed, even if we were so disposed. It is held to be valid unless tainted by such collusion and fraud as affects the bonâ fides of the transaction. But be this as it may, this is the first time it has been doubted that where a widow takes property at the appraisement, (whether the deceased be solvent or insolvent,) the administrator can discharge himself by proof that the property was overvalued. It is obvious that it may lead to much mischief and injustice, if the family, who have enjoyed the property, are permitted to discharge the administrator, and, consequently, themselves, from the payment of the appraised value, on any such pretext. There is danger of collusion and fraud, particularly when the administrator and family, as is usually the case, are closely connected by ties of consanguinity or affinity. The claims of creditors will be little regarded when they conflict with persons so situated. It is the duty of the administrator to charge himself with the appraised value of the goods taken by the widow, because it is a sale by him to her at that price for which he, of course, is answerable to the creditors and personal representatives. There is nothing harsh or unjust in this, as it is the voluntary act of the parties charged. If the administrator pursues the course pointed out by the law, he cannot be injured. If he chooses to deviate from the prescribed rule, for reasons best known to himself, he can excite but little sympathy when the loss, if any, is thrown upon himself.

Decree affirmed.